MICHAEL ZIA MOINI
Attorney at Law
406 Broadway Avenue, Suite 179B
Santa Monica, CA 90401
Telephone: (213) 315-5510

Attorney for Petitioner,
Arnoldo Marcelino Chevez-Alvarez

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ARNOLDO MARCELINO CHEVEZ-ALVAREZ,<br><br>Petitioner,<br><br>v.<br><br>WARDEN, ADELANTO ICE PROCESSING CENTER, in the Warden's official capacity,<br><br>Respondent. | New civil action — Case number to be assigned by the Clerk<br><br>Related case: 5:26-cv-04159-JWH-SK<br><br>PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241 AND SUPPORTING MEMORANDUM |

## I. Nature of the Petition

1. Petitioner challenges his continuing immigration detention following the Government's failure, as alleged below, to provide the hearing required by a conditional federal habeas judgment by the deadline fixed in that judgment. The qualifying hearing occurred September 10, 2026, although the judgment required release no later than September 8 unless the specified hearing was provided. Petitioner seeks release from the detention governed by that judgment, or an expedited determination of compliance and the effect of the late hearing and otherwise by the Court's own discretionary determination that release be allowed.

2. Petitioner identifies the prior proceeding at the outset. This petition is related to Chevez-Alvarez v. Facility Administrator, No. 5:26-cv-04159-JWH-SK, in which Judge John W. Holcomb entered judgment on August 31, 2026. The judgment granted relief in part and denied the remainder without prejudice. Exhibit A. Petitioner does not seek to conceal that adjudication, reopen issues already decided against him on their merits, or obtain a second discretionary assessment of flight risk.

3. The September 10 hearing and October 21 custody decision postdate the August 31 judgment. Petitioner relies on those subsequent events as the present procedural posture. If enforcement belongs exclusively in the prior action, Petitioner requests that this filing be construed or referred as an application to enforce the judgment there, rather than dismissed merely because it was presented as a new petition. No new case number is asserted for the prior action.

## II. Jurisdiction, Venue, and Respondent

4. Petitioner is held in immigration custody at Adelanto ICE Processing Center in San Bernardino County, California. The Warden is his immediate physical custodian and is sued in an official capacity. This Court has territorial jurisdiction over that custodian. Jurisdiction is invoked under 28 U.S.C. §§ 1331 and 2241(c)(3). Relief is requested under 28 U.S.C. § 2243 and the Court's authority to determine compliance with its judgments.

5. This petition concerns the legality of custody. It does not seek review or cancellation of a removal order, reopening of removal proceedings, or a determination of immigration relief. The prior court ordered a hearing under 8 U.S.C. § 1226(a). If Respondent asserts a different present basis for detention, Petitioner requests identification of that basis and the records supporting it in the return.

## III. Material Facts and Procedural History

6. On August 31, 2026, the Court entered judgment in the related action. Paragraph 2 directed Respondents to release Petitioner no later than September 8, 2026, unless they provided

an individualized Rodriguez bond hearing before an immigration judge under 8 U.S.C. § 1226(a), with the Government bearing the burden of proof by clear and convincing evidence. Exhibit A at 2, ¶ 2. Paragraph 3 denied relief in all other respects without prejudice. Id. ¶ 3.

7. The bond hearing occurred on September 10, 2026. Petitioner was denied bond and remained detained. The September 10 order states that DHS established by clear and convincing evidence that Petitioner presented a significant flight risk for which no bond or alternatives to detention would suffice. Exhibit B at 1. It cites entry circumstances, address reliability, limited ties, sponsorship concerns, prospects for relief, and a removal order then under appeal. The immigration judge expressly declined to decide dangerousness. Id.

8. Petitioner acknowledges that the written order assigns the clear-and-convincing burden to DHS. He does not allege a contrary burden allocation merely because bond was denied. His present claim is that the hearing occurred after the federal release deadline. He remained confined through that deadline and continues to be detained.

9. Petitioner subsequently sought another custody determination. On October 21, 2026, Immigration Judge Curtis G. White denied the request under 8 C.F.R. § 1003.19(e), finding an insufficient showing of materially changed circumstances affecting the prior flight-risk determination. Exhibit C at 5–6, 8. The ruling specifically refers to the September 10 denial. It permits appeal within 30 days of service. Id. at 8.

10. The submitted judgment and custody orders do not identify a federal stay or extension of the September 8 deadline. Petitioner requests judicial notice of the related docket and production of any order modifying that deadline. He does not represent that an independent examination of every subsequent docket entry has already occurred.

11. Petitioner requests a return establishing the detention chronology; the hearing notices and any September 8 proceedings; the reason for the September 10 setting, including any continuance requested by either side; any federal compliance report or modification order; and the present statutory basis for custody. These records will permit resolution of compliance without speculation about the cause of the delay.

**IV. Exhaustion and the Prior Habeas Proceeding**

12. Petitioner does not assert that administrative review of the September bond denial has been exhausted. No completed BIA bond appeal is presented as a basis for this petition. He requests consideration of the discrete federal-judgment compliance issue because the BIA cannot alter the district court's judgment or retrospectively extend its deadline.

13. Leonardo v. Crawford, 646 F.3d 1157, 1160–61 (9th Cir. 2011), requires administrative exhaustion of challenges to a bond ruling while recognizing the issuing court's authority to

review compliance with its conditional habeas order. Petitioner invokes the latter authority. His claim turns on the federal deadline, rather than a contention that the immigration judge should assign greater weight to family ties or sponsorship.

14. Petitioner requests that exhaustion be excused for that limited compliance claim. He acknowledges that presenting it as an enforcement matter does not exempt a new challenge to the merits of the bond decision from Leonardo. If any aspect requires further administrative proceedings, he requests a stay of that aspect while the Court resolves the distinct compliance issue, rather than a merits adjudication resting on an assumption of exhaustion.

15. The prior judgment is attached in full. The alleged deadline violation and the October 21 decision occurred after its entry. Petitioner requests review of those subsequent circumstances without relitigation of matters actually resolved on the merits. If the Court determines that a separate action duplicates the related case, he requests referral, appropriate related-case assignment, or construction as an enforcement application in that action. He seeks no conflicting rulings or double recovery.

## V. Ground for Relief and Supporting Law

16. Continued custody following noncompliance with the conditional judgment violates the operative federal mandate. The judgment offered Respondents a defined opportunity to provide a qualifying hearing instead of releasing Petitioner by September 8. Petitioner alleges that the qualifying hearing did not occur until September 10 and that he was not released in the interim. Absent a valid judicial modification or another legally sufficient defense, he seeks enforcement of the release requirement.

17. Harvest v. Castro, 531 F.3d 737, 741–45, 749–50 (9th Cir. 2008), recognizes power to modify a conditional habeas writ after its deadline, but requires the applicable procedural basis for modification. When the government fails to satisfy the condition and fails to establish grounds for relief from the judgment, release is the consequence. Although Harvest arose from state criminal custody, its treatment of a conditional federal habeas judgment supports the requested analysis here. Petitioner acknowledges that the Court may consider a properly supported request for modification, including circumstances explaining the late hearing.

18. The late hearing therefore requires a judicial determination of its effect; its occurrence does not itself establish that the federal judgment was modified. Petitioner asks the Court to identify any operative extension or stay and, if none applies, determine whether Respondent has established grounds for relief from the judgment before treating September 10 as timely compliance.

19. Section 1226(e) limits review of discretionary bond determinations. Singh v. Holder, 638 F.3d 1196, 1202–03 (9th Cir. 2011), distinguishes that limitation from habeas review of legal and constitutional questions. This petition presents a legal compliance issue and does not ask the Court to substitute its assessment of flight risk for the immigration judge's judgment. Petitioner relies on the specific safeguards awarded in his existing judgment, not an assertion that every detainee automatically receives periodic bond hearings.

20. The October 21 denial did not decide whether Respondents complied with September 8. Petitioner does not contend that § 1003.19(e) is facially invalid, that a subsequent hearing was automatically required, or that omitted sponsorship documents establish a constitutional violation. The October order documents continued detention and the administrative posture; it does not independently prove that the federal judgment was satisfied.

21. The requested remedy concerns the detention governed by Exhibit A. If Respondent invokes new statutory authority or materially different custody circumstances, the Court should require specific identification and supporting evidence before determining the appropriate remedy. Petitioner does not seek immunity from lawful immigration proceedings or relief extending beyond the custody lawfully before this Court.

## VI. Prayer for Relief

Petitioner respectfully requests that the Court:

A. Order Respondent to show cause why the writ should not issue, with expedited production of the records identified in paragraph 11;

B. Determine whether the August 31 judgment was satisfied by September 8 and whether a valid stay, extension, or modification excuses the September 10 hearing;

C. Upon finding noncompliance and no sufficient legal ground defeating enforcement, order Petitioner released from the detention governed by the judgment within 24 hours, subject to lawful noncustodial conditions consistent with that judgment;

D. Alternatively, construe or refer this petition as an application to enforce judgment in No. 5:26-cv-04159-JWH-SK and preserve the compliance claim for determination in that action;

E. If necessary, stay any independently unexhausted claim rather than decide it on an assumed exhaustion record; and

F. Retain jurisdiction to ensure compliance and grant further relief appropriate to the established custody record.

Respectfully Submitted,

______________________________

Michael Moini, Esq.

## Exhibits

Exhibit A — August 31, 2026 Judgment, ECF No. 14, No. 5:26-cv-04159-JWH-SK.

Exhibit B — September 10, 2026 bond denial and September 11 certificate of service.

Exhibit C — October 21, 2026 bond decision, certificate of service, and incorporated legal addendum.

# EXHIBIT A

August 31, 2026 Federal Judgment

Chevez-Alvarez | A 241-004-467

JS-6

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

ARNOLDO MARCELINO CHEVEZ-ALVAREZ,

Petitioner,

v.

FACILITY ADMINISTRATOR, Adelanto ICE Processing Center, *et al.*,

Respondents.

Case No. 5:26-cv-04159-JWH-SK

**JUDGMENT**

Pursuant to the "Order Accepting Report and Recommendation to Grant Petition in Part" entered substantially contemporaneously herewith, and pursuant to Rule 58 of the Federal Rules of Civil Procedure,

It is hereby **ORDERED, ADJUDGED,** and **DECREED** as follows:

1. The petition under 28 U.S.C. § 2241 is **GRANTED in part**

2. Respondents are **DIRECTED** to release Petitioner Arnoldo Marcelino Chevez-Alvarez (A# 241-004-467) no later than September 8, 2026, unless Respondents provide Chevez-Alvarez an individualized *Rodriguez* bond hearing before an immigration judge under 8 U.S.C. § 1226(a), with the Government bearing the burden of proof by clear and convincing evidence.

3. In all other respects, the § 2241 petition is **DENIED without prejudice.**

**IT IS SO ORDERED.**

Dated: August 31, 2026

John W. Holcomb
UNITED STATES DISTRICT JUDGE

# EXHIBIT B

September 10, 2026 Bond Denial and Certificate of Service

Chevez-Alvarez | A 241-004-467

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**ADELANTO IMMIGRATION COURT**

Respondent Name:
CHEVEZ-ALVAREZ, ARNOLDO MARCELINO

To:
CHEVEZ-ALVAREZ, ARNOLDO MARCELINO
DHS CUSTODIAL OFFICER
10250 RANCHO ROAD
ADELANTO, CA 92301

A-Number:
241-004-467
Riders:
In Custody Redetermination Proceedings

Date:
09/10/2026

## ORDER OF THE IMMIGRATION JUDGE

The Court gave individualized consideration to the applicant's request for bond. However, DHS met its burden to establish by clear and convincing evidence that the applicant's release would pose such a significant flight risk that no amount of bond and/or alternatives to detention would be appropriate.

Indeed, the Court considered all flight risk factors, including the relatively recent and surreptitious entry into the United States, dubious reliability of the applicant's address, limited ties to the United States, dubious sponsorship, overly speculative pathway to relief (which has already been denied), and removal order, although the latter is presently under appeal. See Ex. 2 (containing an immigration report); Matter of Guerra, 24 I&N Dec. 37, 40 (BIA 2006) (listing flight risk considerations and finding that the Court may give varying weight to the factors present in each case so long as the decision is reasonable); Matter of R-A-V-P-, 27 I&N Dec. 803, 805 (BIA 2020) (the limited prospects for relief and the speculative "likelihood that relief from removal will be granted" substantially increases the flight risk because the applicant has limited incentive to appear for any future immigration proceeding or for removal).

Given the foregoing flight risk finding, the Court did not reach any determination on danger.

Should the applicant appeal the Court's custody redetermination decision to the Board of Immigration Appeals, this Court will provide a more fulsome memorandum to facilitate review of the appeal. See Immigration Court Practice Manual, Chap. 8.3(e)(7).

**Order:**

Bond is denied.

Curtis G. White

Immigration Judge: WHITE, CURTIS 09/10/2026

| | | | | | |
|---|---|---|---|---|---|
| Appeal: | Department of Homeland Security: | ☑ | waived | ☐ | reserved |
| | Respondent: | ☐ | waived | ☑ | reserved |

Appeal Due: 10/13/2026

**Certificate of Service**

This document was served:

Via: [ M ] Mail | [ P ] Personal Service | [ E ] Electronic Service | [ U ] Address Unavailable

To: [ ] Alien | [ P ] Alien c/o custodial officer | [ ] Alien atty/rep. | [ P ] DHS

Respondent Name : CHEVEZ-ALVAREZ, ARNOLDO MARCELINO | A-Number : 241-004-467

Riders:

Date: 09/11/2026 By: CHAMBERS, KARINA, Court Staff

# EXHIBIT C

October 21, 2026 Bond Decision and Incorporated Legal Addendum

Chevez-Alvarez | A 241-004-467

**UNITED STATES DEPARTMENT OF JUSTICE**
**EXECUTIVE OFFICE FOR IMMIGRATION REVIEW**
**IMMIGRATION COURT**
**ADELANTO, CALIFORNIA**

| In the Matter of: | File Number: **A 241-004-467** |
| --- | --- |
| **CHEVEZ-ALVAREZ, ARNOLDO MARCELINO** | **IN BOND PROCEEDINGS** |
| Bond applicant. | |

**BOND DECISION AND MEMORANDUM OF THE IMMIGRATION JUDGE**

This matter came to the Court for custody redetermination. The Court conducted an individualized review, in which it considered the evidence and positions presented therefor. The Court made its decision through its own independent judgment, based on the pertinent law and facts of the case, and not on any political policy. The reasons and factual findings for the Court's decision are addressed herein.[1] Applicable reasoning and factual findings are checked with an "X" in the corresponding box.[2] No additional memorandum will be provided.

**LEGAL ADDENDUM**

☒ An addendum stating points of law and burdens of proof relevant to issues before the Court will be served on the parties and placed in the record of proceedings. That addendum of law is hereby incorporated into this decision by reference.

**AUTHORITY / JURISDICTION / VENUE**

☒ The Court [☐ has / ☒ does not have] authority, jurisdiction, and venue for custody redetermination pursuant to:

☐ Section 236(a) of the Immigration and Nationality Act (INA or Act).

[1] The Court does not necessarily recount all the evidence and considerations. *See Ramirez-Villalpando v. Holder*, 645 F.3d 1035, 1040 (9th Cir. 2011) (a court is not required to "expressly parse or refute on the record each individual argument or piece of evidence"). Rather, the Court discusses relevant evidence and considerations herein to the extent necessary to explain its decision and order(s). *INS v. Bagamasbad*, 429 U.S. 24, 25-26 (1976) ("As a general rule courts and agencies are not required to make findings on issues the decision of which is unnecessary to the results they reach"). Indeed, the Court considered all evidence and pertinent factors individually and in the collective, even if not explicitly mentioned in this decision, and now makes findings of fact and analysis on the most salient issues for the matter's disposition.

[2] By way of clarity regarding any reference in this decision to an exhibit and page number within the Court's electronic record of proceedings, such a citation refers to the exhibit number assigned by the Court and the page number assigned by EOIR as electronically stamped in the lower left margin of the page, rather than to any contrary marking by any party or other entity.

☐ Of significance, *the applicant was admitted into the United States*[, per / ☐ Ex(s). __ / ☐ the testimony].

☐ The Court takes administrative notice of the deportability charge under section 237 contained in the Notice to Appear.

☐ Of note, the applicant is not a *Maldonado Bautista* class member because he was [☐ apprehended upon arrival in the United States / ☐ detained under section [☐ 235(b)(1) / ☐ 236(c) / ☐ 241] of the Act]. *See Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

☐ *A Notice to Appear has not been issued* to initiate a current removal proceeding under INA § 240.

☐ The applicant is presently in [☐ expedited removal / ☐ credible fear / ☐ reasonable fear / ☐ withholding-only / ☐ asylum-only / ☐ ___ ] proceedings[, per / ☐ Ex(s). __ / ☐ the testimony].

☐ The Court takes administrative notice of that.

☐ The applicant[,☐ through counsel,] acknowledged [☐ the same / ☐ that ___ ].

☐ The applicant already has a final removal order and is thus detained under section 241 of the Act[, per / ☐ Ex(s). __ / ☐ administrative notice].

☐ The applicant [☐ is / ☐ is not] an *arriving alien*, consistent with 8 C.F.R. § 1001.1(q) and INA § 235(a)(1).

☐ The Court takes notice of [☐ the checked arriving alien box / ☐ information showing arrival at a port of entry] in the Notice to Appear [☐ at Ex. __ ].

☐ The arrival at a port of entry itself was [☐ not disputed / ☐ acknowledged by the applicant / ☐ shown by Ex(s). __ ].

☐ The record [☐ does / ☐ does not] show that the applicant has been admitted, as defined by INA § 101(a)(13).

☐ Instead, the record shows a parole[, per / ☐ Ex(s). __ / ☐ acknowledgement by the applicant].

☐ Although the applicant is a returning lawful permanent resident (LPR), it [ ☐ was / ☐ was not] shown that he [☐ is / is ☐ not] inadmissible[, per / ☐ Ex(s). __ / ☐ discussion below regarding INA § 236(c) / ☐ ___ ]. *See* INA § 101(a)(13) (regarding inadmissibility for returning LPRs).

☐ The applicant [☐ was / ☐ was not] detained under *section 235(b)(1)* of the Act.

☐ The record shows that the applicant [☐ was / ☐ was not] apprehended at or near the border contemporaneous to unlawful entry into the United States[, per / ☐ Ex(s). __ (showing the date and manner of the entry and apprehension) / ☐ the testimony].

☐ The Court [☐ also] takes administrative notice of the Notice to Appear (showing the date and manner of the entry and apprehension).

☐ The record shows that the applicant [☐ was / ☐ was not] placed in [☐ expedited removal / ☐ credible fear] proceedings[, per / ☐ Ex(s). __ / ☐ the testimony].

☐ The Court takes administrative notice of the corresponding boxes checked in the Notice to Appear.

☐ The applicant [☐ did / ☐ did not] affirmatively show to the satisfaction of an immigration officer continuous physical presence in the United States for the 2-year period immediately prior to the date of the determination of inadmissibility[, per / ☐ Ex(s). __ / ☐ the testimony / ☐ the Notice to Appear (showing an issuance date within 2 years of the alleged entry date)].

☐ The Court takes administrative notice of the Notice to Appear (showing an issuance date within 2 years of the alleged entry date).

☐ The applicant [☐ was / ☐ was not] detained under *section 235(b)(2)* of the Act, as an applicant for admission per section 235(a)(1) of the Act and as the examining immigration officer determined that the applicant is not clearly and beyond a doubt entitled to be admitted.

☐ The record shows that the applicant [☐ has / ☐ has not] been admitted into the United States[, per / ☐ Ex(s). __ / ☐ the testimony].

☐ Instead, the applicant has been issued a Notice to Appear for removal proceedings under a charge of being inadmissible. [☐ Ex(s). __ .]

☐ The Court [☐ also] takes administrative notice of that, including the charge under section 212(a)(6)(A)(i) of the Act [☐ and that this charge has been sustained by the Court].

☐ Of significance, the February 18, 2026 order in *Maldonado Bautista* vacating *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025) was stayed by the United States Court of Appeals for the Ninth Circuit. *See Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM (9th Cir. Mar. 6, 2026).

☐ That the applicant may have been released from prior DHS custody only to be detained later does not change the applicable detention authority.

☐ Any warrant of arrest or custody document or parole issued post hoc does not convert the statutory authority governing detention to section 236(a) of the Act. *See, e.g., Matter of Q. Li*, 26 I&N Dec. 66, 69 n.4 (BIA 2025); *see also Jennings v. Rodriguez*, 583 U.S. 281, 302 (2018).

☐ The applicant has a *removal order that is administratively final*[, per / ☐ Ex(s). __ / ☐ the testimony].

☐ The Court takes administrative notice of that.

☐ The applicant[,☐ through counsel,] acknowledged [☐ the same / ☐ that ___].

☐ Other explanation:

[☐ INA § 236(c) / ☐ *Matter of Joseph*] which [☐ applies / ☐ does not apply] because:

☐ the applicant [☐ has / ☐ does not have] a disqualifying ground of [☐ deportability / ☐ inadmissibility], which:

☐ is *specified in the Notice to Appear*, as is the predicate offense, per [☐ Ex(s). __ / ☐ administrative notice].

☐ The record [☐ does / ☐ does not] establish that DHS is substantially unlikely to prevail on the ground.

☐ Indeed, the corresponding charge was already [☐ conceded by the applicant / ☐ sustained by the Court][, per / ☐ Ex(s). __ / ☐ acknowledgement of the applicant / ☐ administrative notice].

☐ was *brought to the applicant's attention*, who was given an opportunity to be heard on the matter.

☐ Specifically, the Court refers to the *conviction for* ___ ,[☐ with a sentence of ___ ,][☐ *see* Ex(s). __ / ☐ as acknowledged by the testimony].

☐ This [☐ is / ☐ is not] an offense covered by INA § 212(a)(2), to wit, a crime involving moral turpitude (CIMT) because it requires a reprehensible act with scienter. [☐ *See* ___ .]

☐ The CIMT petty offense exception at INA § 212(a)(2)(A)(ii) [☐ does / ☐ does not] apply because:

☐ there were convictions on multiple counts of said offense,

☐ the maximum penalty possible [☐ did / ☐ did not] exceed imprisonment for one year,

☐ the sentence [☐ was / ☐ was not] in excess of 6 months,

[☐ *see* Ex(s). __ / ☐ as acknowledged by the testimony].

☐ Said offense consequently falls under INA § 236(c)(1).

☐ This [☐ is / ☐ is not] an offense covered by the Laken Riley Act (LRA), specifically __ .

☐ The offense allegedly occurred [☐ before / ☐ after] January 29, 2025, the effective date of the LRA, [☐ *see* Ex(s). __ / ☐ as acknowledged by the testimony].

☐ The Court considered the *post-conviction relief* and finds that the conviction [☐ does / ☐ does not] presently carry per se immigration consequences.

☐ The Court references the vacatur under PC § 1473.7(a)(1). Ex(s). __ . Such a vacatur is effective for immigration purposes. *Bent v. Garland*, 115 F.4th 934, 940 (9th Cir. 2024) (the "plain text" of PC § 1473.7(a)(1) "does not permit a state court to vacate a conviction to alleviate any immigration consequences arising from the conviction or sentence"); *cf. Matter of De Jesus-Platon*, 29 I&N Dec. 7, 10–11 (BIA 2025) (where the record showed a

vacatur under PC § 1473.7 generally and not subsection 1473.7(a)(1) specifically, that the applicant failed to show eligibility for relief).

☐ *See also* Ex(s). __ (showing that the vacatur was granted on the basis of a substantive or procedural defect).

☐ release from criminal custody for the offense at issue occurred [☐ prior / ☐ subsequent] to October 8, 1998[, per / ☐ Ex(s). __ / ☐ the testimony].

☐ DHS did not argue, and the Court does not find, that there is any other conviction that could constitute a basis for mandatory detention. *See generally* Ex(s). __ .

☐ (other explanation:)

☐ *See* Ex(s).

☐ Prolonged detention:

☐ consistent with *Rodriguez v. Holder*, No. CV 07-3239 TJH (RNBx), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013).

☐ The applicant has a final order of removal and is thus subject to detention under section 241 of the Act[, per / ☐ Ex(s). __ / ☐ the testimony / ☐ administrative notice / ☐ acknowledgement by the applicant's counsel]. Detention under that authority is no longer covered by *Rodriguez*. *Rodriguez v. Robbins*, 804 F.3d 1060, 1086 (9th Cir. 2015).

☐ consistent with *Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG (DTBx), 2013 WL 3674492 (C.D. Cal. Apr. 23, 2013).

☐ Class membership for a prolonged detention hearing [☐ was / ☐ was not] established due to:

[☐ sufficient / ☐ insufficient] length of detention. [☐ DHS conceded / ☐ The record shows / ☐ The record does not show] uninterrupted detention in DHS custody for at least 180 days[, per / ☐ Ex(s). __ (showing an apprehension on ___ ) / ☐ the testimony / ☐ acknowledgement by the applicant's counsel].

☐ a live claim in underlying immigration proceedings [☐ being / ☐ not being] pending[, per / ☐ Ex(s). __ / ☐ the testimony / ☐ administrative notice / ☐ acknowledgement by the applicant's counsel].

☐ the applicant previously having been given a prolonged detention hearing on ___ [, per / ☐ Ex(s). __ / ☐ the testimony / ☐ administrative notice / ☐ acknowledgement by the applicant's counsel]. The Court denied bond at that hearing, finding that DHS met its burden of showing [☐ danger / ☐ flight risk] by clear and convincing evidence. The applicant is not entitled to another prolonged detention hearing.

☐ (other explanation:) ___ [, per / ☐ Ex(s). __ / ☐ the testimony].

☒ 8 C.F.R. § 1003.19(e), because the Court previously denied bond and because a material change of circumstances since the prior bond redetermination [☐ was / ☒ was

not] shown to be sufficient to justify a departure from the Court's prior findings and bond denial.

☒ The Court refers specifically to the bond decision dated 09/10/2026.

☒ A change of circumstances since the prior bond redetermination [☐ was / ☒ was not] shown to be *material* to the basis of the Court's prior [☒ denial / ☐ amount] of bond, to wit, [☐ lack of jurisdiction / ☐ danger / ☒ flight risk].

☐ Specifically, hardship to the [☐ applicant / ☐ applicant's family] following the previous bond denial does not alleviate the Court's [☐ danger / ☐ flight] concerns.

☐ The Court previously considered ability to pay but the Court found, and still finds for the same reasons, that a significant bond amount – as ordered – is necessary to ensure future appearances and compliance with Court orders.

☒ Indeed, a change of circumstances since the prior bond redetermination [☐ was / ☒ was not] shown to *have merit and constitute a true change.*

☒ The motion does not adequately explain what actual change of circumstances regarding [☐ jurisdiction / ☐ danger / ☒ flight risk] has taken place since the prior hearing.

☒ The Court's prior bond denial was [☒ based on / ☐ another reason / ☒ flight risk / ☒ not on lack of jurisdiction, as claimed in the new bond motion / ☐ and / ☐ was memorialized in the decision dated ___ ].

☐ The Court previously considered the prospects that the criminal case would [☐ not result in a conviction / ☐ receive post-conviction relief].

☐ The applicant has other criminal history that contributed to the danger finding.

☐ Of note, the applicant is not a *Maldonado Bautista* class member because he was [☐ apprehended upon arrival in the United States / ☐ detained under section [☐ 235(b)(1) / ☐ 236(c) / ☐ 241] of the Act][, ☐ as discussed in the decision dated ___ ]. *See Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025).

☐ The new [☐ discovery of a sponsor / ☐ document(s) regarding ___ ] following the previous bond denial does not alleviate the Court's [☐ danger / ☐ flight] concern(s).

☐ The provision of additional evidence that could have been presented for the prior bond redetermination does not constitute a true change of circumstances[, ☐ nor does it alleviate the Court's [☐ danger / ☐ flight] concern(s)].

☐ The motion does not establish factual innocence of the criminal activity at issue. Indeed, the Court can and does consider [☐ conduct / ☐ arrests] that did not result in a criminal conviction.

☐ The Court [☐ did / ☐ did not] *previously consider* the claimed change of circumstances, or at least the prospects of its occurrence.

☐ There is a *countervailing* material change of circumstances of at least equal gravity since the prior bond redetermination, specifically:

☐ The applicant has since been denied relief from removal.

☐ The applicant's departure from the United States.

☐ The Court [☐ does / ☐ does not] have jurisdiction over the place of detention. *See* 8 C.F.R. § 1003.19(c); *Matter of Vizcaino Aybar*, 29 I&N Dec. 736 (BIA 2026).

☐ The record does not otherwise show authority by the Court to redetermine custody.

☐ (Other explanation:)

☐ *See* Ex.

☐ That custody redetermination authority was acknowledged by DHS.

☐ This hearing was conducted pursuant to order by a U.S. District Court. [☐ Ex. __.]

☐ That order specifies that the [☐ bond hearing is to be conducted under section 236(a) of the Act / ☐ burden of proof is on DHS by clear and convincing evidence]. *Id.*

☐ That order does not [☐ otherwise] specify [☐ under what authority the hearing should be conducted / ☐ who the burden of proof is on / ☐ what the standard of proof is]. *Id.*

☐ Regardless of authority and jurisdiction for custody redetermination, bond may be denied in this matter for reasons specified below.

**ORDER(S)**

All premises considered,

☒ Release from custody is DENIED.

☐ Release from custody is GRANTED under the following conditions:

☐ On recognizance.

☐ Bond in the amount of $

☐ The Court considered ability to pay, but the bond amount is appropriate upon consideration of all factors relating to flight risk.

☐ Alternatives to Detention at DHS's discretion.

☐ The bond grant and conditions are pursuant to agreement by the parties.

☐ (Other:)

☐ The bond request is WITHDRAWN WITHOUT PREJUDICE:

☐ per request from the applicant.

☐ because the applicant was not ready to proceed. The applicant may re-request when ready.

☐ because the applicant was already released from DHS custody and has not pursued any amelioration of the conditions of release.

☐ because the applicant's attorney failed to appear at the hearing as scheduled.

☐ The Court indicated that the applicant does not appear to be eligible for bond through the Court at this time.

☐ The Court has not yet made any determination as to eligibility for bond.

☐ The motion to continue is now moot.

☐ The Court advised the applicant of the obligation to inform the Court of any change of address within 5 business days and the consequence for failure to appear to future hearings, to wit, a removal order in his absence.

☐ The applicant acknowledged understanding the advisal.

**APPEAL**

Department of Homeland Security: ☐ waived ☐ reserved

The applicant: ☐ waived ☐ reserved

☒ Either party may appeal if so desired. Any appeal is due within 30 days of service of this order.

CURTIS WHITE Digitally signed by CURTIS WHITE Date: 2026.10.21 15:57:40 -07'00'

**Curtis G. White**
**Immigration Judge**
**Date: 10/21/2026**

**CERTIFICATE OF SERVICE**

THIS DOCUMENT WAS SERVED BY: MAIL [M] PERSONAL SERVICE [P] ELECTRONIC SERVICE [E]

TO: [ ]ALIEN [ ]ALIEN c/o Custodial Officer [ ]ALIEN's ATT/REP [E]DHS

DATE: 10/21/2026 BY: COURT STAFF KARINA CHAMBERS

Attachments: [ ]EOIR-33 [ ]EOIR-28 [ ]Legal Services List [ ] Other

## ADDENDUM OF LAW – CUSTODY

The following statements of law are hereby incorporated into the Immigration Judge's decision. These statements are not the sole legal basis for the decision and are meant to be read in conjunction with the decision itself.

### Authority and Jurisdiction

"Four statutes grant the Government authority to detain noncitizens who have been placed in removal proceedings . . . ." *Avilez v. Garland*, 69 F.4th 525, 529 (9th Cir. 2023) (citing sections 236(a), 236(c), 235(b), and 241(a) of the Immigration and Nationality Act (INA or Act)). "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary . . . ." *Prieto-Romero v. Clark*, 534 F.3d 1053, 1057 (9th Cir. 2008). Noncitizens remain subject to the same detention authority "throughout the administrative and judicial phases of removal proceedings." *Avilez*, 69 F.4th at 535–36 (extending case law pertaining to section 236(a), and similarly holding that "noncitizens subject to mandatory detention under [section 236(c)] are not statutorily eligible for release on bond during the judicial phase of the proceedings").

Of note, "courts are obliged to notice jurisdictional issues and raise them on their own initiative," *Hamer v. Neighborhood Hous. Servs. of Chicago*, 583 U.S. 17, 20 (2017), and "should generally decide, as a threshold matter, whether they have subject matter jurisdiction before moving on to other, non-merits threshold issues," *Bibiano v. Lynch*, 834 F.3d 966, 971 n.4 (9th Cir. 2016). Litigating parties cannot waive subject-matter jurisdiction. *See, e.g.*, Fed. R. Civ. Proc. 12(b)(1). Rather, "courts must enforce jurisdictional rules *sua sponte*, even in the face of a litigant's forfeiture or waiver." *Santos-Zacaria v. Garland*, 598 U.S. 411, 416 (2023).

### *INA § 236(a)*

Where detention authority rests with section 236(a), "the Attorney General has the authority to grant bond in the exercise of discretion, which has been delegated to the Immigration Judges and the Board." *Matter of Fatahi*, 26 I&N Dec. 791, 793 (BIA 2016). There are, however, many individuals who do not fit within the discretionary framework that Congress devised in section 236(a), such as those who are held under the other detention statutes discussed herein.

Additionally, the Court has not been provided with authority to redetermine the conditions of custody imposed by the Department of Homeland Security (Department) on individuals who have not been served with a Notice to Appear for removal proceedings under section 240 of the Act. *Matter of A-W-*, 25 I&N Dec. 45, 46–47 (BIA 2009). Thus, individuals in asylum-only or withholding-only proceedings do not qualify for bond under section 236(a). *Id.*

Further, "[a]rriving aliens"—defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry . . . even if paroled"—are ineligible for custody redetermination by the Court, even if they are in removal proceedings. 8 C.F.R. §§ 1003.19(h)(2)(i)(B), 1001.1(q).

Moreover, the Court "is divested of jurisdiction over a bond proceeding . . . upon the entry of an administratively final order of deportation." *Matter of Valles*, 21 I&N Dec. 769, 772 (BIA 1997); *see* 8 C.F.R. § 1236.1(d)(1) ("[A] respondent may, at any time *before* [a removal] order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released." (emphasis added)).

*INA § 236(c)*

Under section 236(c), if a respondent has "a qualifying offense, then detention is automatic and nondiscretionary." *Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024); *see also Matter of Garcia Arreola*, 25 I&N Dec. 267, 269 (BIA 2010) (where section 236(c) applies, "an Immigration Judge has no authority to redetermine the conditions of custody"); 8 C.F.R. § 1003.19(h)(2)(i)(D) (same). Qualifying offenses are set forth in the statute. *See* INA § 236(c)(1). Section 236(c) thus mandates detention for detainees with such offenses unless there was a corresponding release from criminal custody that occurred no later than October 8, 1998. *Matter of Adeniji*, 22 I&N Dec. 1102, 1111, 1115 (BIA 1999) (en banc).

However, pursuant to *Matter of Joseph*, 22 I&N Dec. 799 (BIA 1999) (en banc), "[d]etainees who deny that they satisfy any [INA section 236(c)] predicate may challenge their mandatory detention." *Nielsen v. Preap*, 586 U.S. 392, 418 n.8 (2019). "At a *Joseph* hearing, that person 'may avoid mandatory detention by demonstrating that he is not [a noncitizen], was not convicted of the predicate crime, or that [the Department] is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention.'" *Jennings v. Rodriguez*, 583 U.S. 281, 289 n.1 (2018) (quoting *Demore v. Kim*, 538 U.S. 510, 514 n.3 (2003)); *see also Matter of Kotliar*, 24 I&N Dec. 124, 124 (BIA 2007) (holding a detainee "need not be charged with the ground that provides the basis for mandatory detention under section 236(c)(1) of the Act in order to be considered an alien who 'is deportable' on that ground"). Nonetheless, a determination in the detainee's favor "does not lead to automatic release. It simply allows an Immigration Judge to consider the question of bond under the custody standards of section 236(a)." *Matter of Joseph*, 22 I&N Dec. at 806.

*INA § 235(b)*

The detention authority under section 235(b) "applies primarily to aliens seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. "Congress has defined the concept of an 'applicant for admission' in an unconventional sense, to include not just those who are expressly seeking permission to enter, but also those who are present in this country without having formally requested or received such permission, or who have been brought in against their will under certain circumstances." *Matter of Lemus*, 25 I&N Dec. 734, 743 (BIA 2012) (citing INA § 235(a)(1)). Such "applicants for admission fall into one of two categories" that are described in sections 235(b)(1) and (b)(2). *Jennings*, 583 U.S. at 287.

*Evolution of Case Law Regarding INA § 235 Detention*

For years, immigration courts interpreted this statutory framework by assuming mandatory detention under section 235 only applied to those in expedited removal proceedings, and that once formal removal proceedings commenced under section 240, detention jurisdiction shifted to section 236. This assumption was based on *Matter of X-K-*, 23 I&N Dec. 731 (BIA 2005), where

the Board of Immigration Appeals (Board) ruled that noncitizens placed in expedited removal proceedings who were subsequently transferred to formal proceedings following a positive credible fear determination would be eligible for a custody redetermination hearing, unless excluded by the regulations. However, later courts disagreed with this interpretation. The United States Supreme Court (Supreme Court) concluded that section 235(b)(1) "unequivocally" required the detention of all noncitizens first placed in expedited removal proceedings and then later transferred to formal removal proceedings under section 240. *Jennings*, 583 U.S. at 300. The Supreme Court described the statutory language as "quite clear" and "mandate[s] detention of [noncitizens] throughout the completion of applicable proceedings and not just until the moment those proceedings begin." *Id.* at 302–03.

Relying on *Jennings*, the Attorney General subsequently determined that sections 235 and 236 apply to separate classes of noncitizens, and ruled that aliens subject to expedited removal who have a positive credible fear determination and are subsequently placed in formal removal proceedings "remain ineligible for bond, whether they are arriving at the border or apprehended in the United States." *Matter of M-S-*, 27 I&N Dec. 509, 515 (A.G. 2019). The Attorney General's decision in *Matter of M-S-* also expressly overruled *Matter of X-K-*. Thus, the presumption that anyone in section 240 proceedings was eligible for a bond redetermination hearing under section 236 no longer applies. Rather, immigration judges are now bound by section 235 in its entirety and do not have jurisdiction to redetermine bond for individuals who are placed in removal proceedings after the expedited removal process.

More recently, the Board ruled that "for aliens arriving in and seeking admission into the United States who are placed directly in full removal proceedings, section 235(b)(2)(A) . . . mandates detention 'until removal proceedings have concluded.'" *Matter of Q. Li*, 29 I&N Dec. 66, 68 (BIA 2025) (quoting *Jennings*, 583 U.S. at 299). The Board stated that "an applicant for admission who is arrested and detained without a warrant while arriving in the United States, whether or not at a port of entry, and subsequently placed in removal proceedings is detained under section 235(b) of the INA . . . and is ineligible for any subsequent release on bond under section 236(a) of the INA." *Id.* at 69. The Board also held that "an alien detained under section 235(b) who is released from detention pursuant to a grant of parole under section 212(d)(5)(A), and whose grant of parole is subsequently terminated, is returned to custody under section 235(b) pending the completion of removal proceedings." *Id.* at 70.[1]

In sum, these developments in case law establish that all applicants for admission are detained under section 235 and that the Court is without authority to redetermine their custody. With these developments in mind, the Court turns next to the text and statutory structure of section 235.

---

[1] The Board subsequently issued an unpublished opinion that expounded on the ruling in *Matter of Q. Li*, and reasoned that "respondent is an applicant for admission despite having been in the United States for over 10 years since his alleged last illegal entry." Cristobal Francisco Martin, A 240 468 269 (BIA May 22, 2025) (unpublished). The Board explained that "aliens arriving in the United States who are placed in expedited removal proceedings pursuant to section 235(b)(1)(A)" are ineligible for release on bond, and that "[a]ll other aliens arriving in and seeking admission to the United States who are placed directly in full removal proceedings after failing to establish their admissibility pursuant to section 235(b)(2)(A) . . . are likewise subject to detention until removal proceedings have concluded." *Id.* Thus, the Board affirmed the IJ's "determination that the respondent is subject to mandatory detention under section 235(b)(2)(A)" and "ineligible for bond." *Id.*

*INA § 235 generally*

Section 235 states that "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." INA § 235(a)(1); *see also Matter of Velasquez-Cruz*, 26 I&N Dec. 458, 462 n.5 (BIA 2014) ("We note that regardless of whether an alien who illegally enters the United States is caught at the border or inside the country, he or she will still be required to prove eligibility for admission."). As previously noted, "applicants for admission fall into one of two categories, those covered by § [235](b)(1) and those covered by § [235](b)(2)." *Jennings*, 583 U.S. at 287.

*INA § 235(b)(1)*

Section 235(b)(1) "sets forth two independent conditions that must be satisfied for an alien to be subject to expedited removal, each of which has two possible avenues for satisfaction. First, the alien must belong to one of two categories: aliens 'who [are] arriving in the United States' or aliens 'described in clause (iii).' Second, the examining immigration officer must determine that the alien is inadmissible under either of the two specifically enumerated subsections of [section 212]." *United States v. Gambino-Ruiz*, 91 F.4th 981, 985–86 (9th Cir. 2024) (first alteration in original) (quoting INA § 235(b)(1)(A)(i)); *but see* INA § 235(b)(1)(F) (providing a narrow exception for "an alien who is a native or citizen of a country in the Western Hemisphere with whose government the United States does not have full diplomatic relations and who arrives by aircraft at a port of entry").

An "arriving alien" is generally defined as "an applicant for admission coming or attempting to come into the United States at a port-of-entry," and states that such individual "remains an arriving alien even if paroled pursuant to section 212(d)(5) of the Act, and even after any such parole is terminated or revoked." 8 C.F.R. § 1001.1(q). Governing regulations also provide that "an immigration judge may not redetermine conditions of custody imposed by the Service with respect to . . . [enumerated] classes of aliens" under 8 C.F.R. § 1003.19(h)(2)(i), including "[a]rriving aliens in removal proceedings." 8 C.F.R. § 1003.19(h)(2)(i)(B). Importantly, however, section 1003.19(h)(2)(i) "does not provide an exhaustive catalogue of the classes of aliens who are ineligible for bond." *Matter of M-S-*, 27 I&N Dec. at 518. The Board has also noted section 235(a)(1) "has broader applicability than does the term 'arriving alien' as defined in the regulation," and thus the definition in 8 C.F.R. § 1001.1(q) does not determine whether an individual is "ineligible for bond under 8 C.F.R. § 1003.19(h)(2)(i)(B)." *Matter of Q. Li*, 29 I&N Dec. at 68 n.2. Furthermore, the United States Supreme Court has made clear that an alien "who tries to enter the country illegally is treated as an 'applicant for admission,' and an alien who is detained shortly after unlawful entry cannot be said to have 'effected an entry.'" *DHS v. Thuraissigiam*, 591 U.S. 103, 140 (2020) (first quoting INA § 235(a)(1), then quoting *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001)).

The first condition of section 235(b)(1) may also be satisfied if an alien is described in clause (iii). This provision permits the Attorney General to designate classes of "any or all aliens" who have not been admitted or paroled, and has been present for less than two years immediately prior to the

immigration officer's determination of inadmissibility. INA § 235(b)(1)(A)(iii)(I)–(II).[2] This clause also "allows the government to treat designated aliens as if they were 'arriving in the United States' for purposes of determining their admissibility." *Gambino-Ruiz*, 91 F.4th at 987–88 (quoting INA § 235(b)(1)(A)(iii)).

The second condition of section 235(b)(1) requires a determination of inadmissibility under section 212(a)(6)(C) or (a)(7). This requirement thus "applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation." *Jennings*, 583 U.S. at 287; *see* INA § 212(a)(6)(C)(i) ("Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible."); *id.* § 212(a)(7)(A)(i) ("[A]ny immigrant at the time of application for admission" is inadmissible if (I) he "is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality," or (II) his "visa has been issued without compliance with the provisions of section 1153 of this title[.]").

An applicant for admission who is covered by section 235(b)(1) is subject to expedited removal procedures set forth in that provision. *See Matter of Lujan-Quintana*, 25 I&N Dec. 53, 54 (BIA 2009) (describing expedited removal proceedings). Pursuant to those procedures, an applicant is "normally ordered removed without further hearing or review pursuant to an expedited removal process" unless he "applies for asylum and has a credible fear of persecution," in which case he "shall be detained for further consideration of the application." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (internal quotation marks and citation omitted); INA § 235(b)(1)(B)(ii), (iii)(IV) (stating an applicant subject to expedited removal "*shall* be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed," or, if found to have "a credible fear of persecution . . . , the alien *shall* be detained for further consideration of the application for asylum" (emphasis added)); *see* 8 C.F.R. § 235.3(b)(2)(iii) (stating an "alien in expedited removal . . . *shall* be detained pending determination and removal" (emphasis added)). Thus, regardless of "[w]hether an applicant [for admission] who raises an asylum claim receives full or only expedited review, the applicant is not entitled to immediate release." *Thuraissigiam*, 591 U.S. at 111; *see also Matter of*

[2] Designated subsets of the class described in subclause (II) are published in the Federal Register. *See, e.g.*, Designating Aliens for Expedited Removal, 90 Fed. Reg. 8139, 8140 (Jan. 24, 2025) (designating aliens "who did not arrive by sea, who are apprehended anywhere in the United States more than 100 air miles from a U.S. international land border, and who have been continuously present in the United States for [either] less than two years," or "for at least 14 days but for less than two years"); Designating Aliens for Expedited Removal, 69 Fed. Reg. 48877, 48880 (Aug. 11, 2004) ("Aliens who are inadmissible under sections 212(a)(6)(C) or (7) of the Act, who are physically present in the U.S. without having been admitted or paroled following inspection by an immigration officer at a designated port-of-entry, who are encountered by an immigration officer within 100 air miles of any U.S. international land border, and who have not established . . . that they have been physically present in the U.S. continuously for the 14-day period immediately prior to the date of encounter."); Notice Designating Aliens Subject to Expedited Removal Under Section 235(b)(1)(A)(iii) of the Immigration and Nationality Act, 67 Fed. Reg. 68924, 68925–68926 (Nov. 13, 2002) (designating—with the exception of "Cuban citizens or nationals"—all "aliens who arrive in the United States by sea, either by boat or other means, who are not admitted or paroled, and who have not been physically present in the United States continuously for the two-year period prior to the determination of inadmissibility"); *see also* Eliminating Exception To Expedited Removal Authority for Cuban Nationals Encountered in the United States or Arriving by Sea, 82 Fed. Reg. 4902 (Jan. 17, 2017).

*Cabrera-Fernandez*, 28 I&N Dec. 747, 749 n.2 (BIA 2023) ("[D]etained individuals in expedited removal proceedings are not entitled to bond hearings under the terms of the statute irrespective of detention length." (citing *Jennings*, 583 U.S. at 299–300)).

*INA § 235(b)(2)*

Section 235(b)(2) sets forth procedures for the "[i]nspection of other aliens." Apart from narrow exceptions, this paragraph applies when "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." INA § 235(b)(2)(A); *see id.* § 235(b)(2)(B) (excepting an applicant "to whom paragraph (1) applies," or who is a crewman or a stowaway). Moreover, implementing regulations further clarify the class of noncitizens covered in paragraph (b)(2):

> An alien who was not inspected and admitted or paroled into the United States but who establishes that he or she has been continuously physically present in the United States for the 2–year period immediately prior to the date of determination of inadmissibility, shall be detained in accordance with [INA] section 235(b)(2).

8 C.F.R. § 235.3(b)(1)(ii). "A regulation promulgated by the Attorney General has the force and effect of law" in immigration court. *Matter of Alania-Martin*, 25 I&N Dec. 231, 234 (BIA 2010) (quoting *Matter of Fede*, 20 I&N Dec. 35, 36 (BIA 1989)). "Moreover, it is settled that the immigration judge and [the] Board lack jurisdiction to rule upon the constitutionality of the Act and the regulations." *Matter of C-*, 20 I&N Dec. 529, 532 (BIA 1992) (citations omitted). Thus, the Court interprets these statutory and regulatory provisions as acting in tandem to define "applicant for admission" as including aliens present without inspection and admission or parole for a continuous period of at least two years, and are therefore subject to the provisions set forth in section 235(b)(2).

In general, where "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall* be detained for a proceeding under section [240]." INA § 235(b)(2)(A) (emphasis added); *see* 8 C.F.R. § 235.3(b)(1)(ii) (describing aliens who "*shall* be detained in accordance with section 235(b)(2)" (emphasis added)). Indeed, this statute "mandates detention 'if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted.'" *Rodriguez Diaz*, 53 F.4th at 1197 (first quoting *Jennings*, 583 U.S. at 287, then quoting INA § 235(b)(2)(A)). "Immigration Judges lack authority to hear bond requests or to grant bond to aliens who are present in the United States without admission," including "an alien who crossed the border unlawfully without inspection, even if that alien has avoided apprehension for more than 2 years." *Matter of Yajure Hurtado*, 29 I&N Dec. 216, 228 (BIA 2025). However, the United States Court of Appeals for the Ninth Circuit (Ninth Circuit) has taken a contrary view. *Rodriguez Vasquez v. Bostock*, No. 25-6842, ---F.4th---, 2026 WL 2196424 (9th Cir. July 30, 2026).

*INA § 235 Detention and Issuance of an Administrative Warrant or Notice of Custody Determination*

Section 236 does contemplate the detention of an individual in lawful status who is arrested with a warrant. *See Jennings*, 583 U.S. at 302 (explaining INA § 236(a) "authorizes detention only '[o]n a warrant issued' by the Attorney General leading to the alien's arrest" (alteration in original)). Nonetheless, the statutory detention authority in section 235 is not altered by the issuance of an administrative arrest warrant. Such an authorization to effectuate an arrest is set forth in a Form I-200, Warrant for Arrest of Alien, which commands the arrest of an individual who has been lawfully admitted in the United States. In contrast, the Department has the authority to arrest individuals who are classified as "applicants for admission" with or without a warrant. *See* INA § 287(a)(2); 8 C.F.R. § 287.8(c)(2)(ii). Applicants for admission who are arrested without a warrant are subject to mandatory detention under section 235. *See, e.g., Matter of Q. Li*, 29 I&N Dec. at 70 ("As an alien arrested without a warrant . . . the respondent's continued detention is mandated by section 235(b) of the INA."). Furthermore, courts have never determined that "arriving aliens" are eligible for bond because the Department also issued an I-200.[3] Moreover, the issuance of the warrant does not convert the statutory authority governing detention from section 235 to section 236, and rather, "[o]nce an alien is detained under section 235(b), [the Department] cannot convert the statutory authority governing his detention from section 235(b) to section 236(a) through the post-hoc issuance of a warrant." *Matter of Q. Li*, 29 I&N Dec. at 69 n.4.

Similarly, language in a Form I-286, Notice of Custody Determination, does not serve to provide a conclusive and binding determination of the detention authority permitting an alien's custody. Importantly, governing regulations do not indicate that the issuance of a Form I-286 is mandatory. *See also* 8 C.F.R. § 236.1(g) (providing "an immigration officer *may* issue a Form I-286" (emphasis added)). Furthermore, while such forms may include language that indicates immigration officers arrested a respondent pursuant to INA section 236, such language does not independently alter the detention authority authorizing his custody. The Court is not persuaded that the mere issuance of a preprinted form by a field officer after a respondent's arrest can abrogate the clear statutory mandate requiring detention under section 235(b)(1) or (b)(2). More importantly, the Department does not have "prosecutorial discretion" to detain a noncitizen under the permissive ("may detain") detention provisions of section 236(a) where Congress has authorized mandatory detention ("shall be detained") under section 235. *See Maldonado v. Bostock*, No. 2:23-cv-00760-LK-BAT, 2023 WL 5804021, at *2 (W.D. Wash. Aug. 8, 2023) ("The parties provide no authority for the proposition that DHS retains discretion to sidestep or override Section [235] by issuing an NTA and arrest warrant.").

[3] There are other detention statutes for which the issuance of a warrant does not convert the detention authority. *See* INA § 236A (requiring the detention of "terrorist aliens" and allowing for release "only if" the Attorney General decides that certain conditions are met); *id.* § 241(a)(1)-(2), (6) (providing the detention scheme for those who have been ordered removed); *id.* § 241(c)(2) (describing stay of removal procedures and release authority for removal of noncitizens arriving at a port of entry); *id.* § 241(c)(3) (delineating detention pending removal for noncitizens arriving at a port of entry and giving exceptions for those eligible to apply for admission). *See also Matter of A-W-*, 25 I&N Dec. 45 (BIA 2009) (holding that noncitizens who have been admitted into the United States under the visa waiver program, *see* INA § 217(a), and who are placed in asylum-only proceedings after being found subject to removal, are ineligible for bond hearings). In each instance, DHS may issue an I-200 in connection with the arrest of the noncitizen, but these laws do not allow the existence of a warrant to convert the detention authority.

In short, it is not the issuance of a warrant or an initial custody determination that determines detention authority, but rather an individual's status as an applicant for admission that subjects him to mandatory detention. The language of the statute and guidance from the Supreme Court and Attorney General support the conclusion that section 235 applies to applicants for admission that are removable under section 212 and section 236 applies only to those who have been admitted and are removable under section 237. Thus, the issuance of a warrant may be a prerequisite for detention under section 236, but it does not convert detention under section 235 to detention under section 236. Similarly, an initial custody determination by immigration officers does not independently establish that the Court has discretion to redetermine the custody of aliens subject to mandatory detention under section 235.

*INA § 235 Detention and References in INA § 236(c) to INA § 212*

The Court's conclusions above regarding section 235(b) detention is not altered by references in section 236(c) to section 212, including the recently enacted Laken Riley Act (LRA), Pub. L. 119-1, 139 Stat. 3 (Jan. 29, 2025). The LRA also added a provision to section 236(c) that mandates the detention of aliens charged under sections 212(a)(6), (6)(C), and (7). *See* Pub. L. 119-1, § 2 (codified at INA § 236(c)(1)(E)(i)–(ii)).[4] Nevertheless, the LRA did not amend the permissive detention and custody redetermination provisions of section 236(a). In fact, section 236(a) does not mention applicants for admission or other aliens who are inadmissible to the United States. That the Attorney General "shall take into custody" certain criminal aliens who are inadmissible to the United States can hardly be said to grant applicants for admission the right to a discretionary bond hearing under section 236(a). *See* INA § 236(c). If Congress's inclusion of inadmissible criminal aliens in section 236(c) renders otherwise inadmissible aliens eligible for a bond hearing under section 236(a), this would mean that arriving aliens, who are typically charged as inadmissible under section 212(a)(7) of the Act, would also be eligible for a bond hearing under section 236(a). This would turn decades of immigration law on its head. *See* 8 C.F.R. § 1003.19(h)(2)(i)(B) (making arriving aliens ineligible for custody redeterminations before an immigration judge). In addition, such logic would also render the Attorney General's decision in *Matter of M-S-* meaningless because the class of aliens addressed in that decision were all inadmissible under sections 212(a)(6), (6)(C), or (7) of the INA.

*INA § 235 Detention and Release from Custody on Parole*

While detention is generally mandatory under section 235(b), in some instances, detained aliens may be granted parole and released from custody. The Act contemplates two distinct forms of parole: "Release on conditional parole under section 236(a)(2)(B) . . . is legally distinct from release on humanitarian parole under section 212(d)(5)(A)[.]" *Matter of Cabrera-Fernandez*, 28 I&N Dec. at 747. Given that the permissive detention provisions under section 236(a) are not applicable to persons covered by section 235, such individuals are ineligible for conditional parole. A separate INA provision permits the parole "any alien applying for admission" into the United States "for urgent humanitarian reasons or significant public benefit,'" which establishes an

[4] While the LRA also amended INA section 235, those amendments do not alter the mandatory nature of that statute's detention provisions. *See* Pub. L. 119-1, § 3(a) (renumbering paragraphs and adding a provision pertaining to state enforcement).

EOIR – 17 of 23

"express exception to mandatory detention" under section 235. *Matter of M-S-*, 27 I&N Dec. at 516–17; *see* INA § 212(d)(5); *see also Matter of Q. Li*, 29 I&N Dec. at 69 ("The only exception permitting the release of aliens detained under section 235(b) of the INA . . . is the parole authority provided by section 212(d)(5)(A) of the INA."). However, the Court has no authority to grant humanitarian parole because "the parole authority under section 212(d)(5)(A) . . . is now delegated solely to the Secretary of Homeland Security." *Matter of Castillo-Padilla*, 25 I&N Dec. 257, 260–61 (BIA 2010).

Moreover, parole does not change an alien's status such that the detention authority governing his custody shifts to section 236. *See, e.g.*, *Alanniz v. Barr*, 924 F.3d 1061, 1065–67 (9th Cir. 2019) ("'The parole of aliens seeking admission is simply a device through which needless confinement is avoided . . . was never intended to affect an alien's status,' and to hold that a noncitizen's parole placed him legally within the United States 'is inconsistent with the congressional mandate, the administrative concept of parole, and the decisions of this Court.'" (quoting *Leng May Ma v. Barber*, 357 U.S. 185, 190 (1958))). Rather, an individual "detained under section 235(b) . . . who is released from detention pursuant to a grant of parole under section 212(d)(5)(A) . . . , and whose grant of parole is subsequently terminated, is returned to custody under section 235(b) pending the completion of removal proceedings." *Matter of Q. Li*, 29 I&N Dec. at 66; *see also* 8 C.F.R. § 235.3(b)(2)(iii), (4)(ii), (5)(i) (requiring that applicants for admission shall be returned to the custody from which they were paroled when parole is terminated).

***INA § 241(a)***

When a respondent "has a final removal order that is not subject to a judicial stay, detention authority shifts" to section 241(a). *Rodriguez Diaz*, 53 F.4th at 1197. "After the entry of a final order of removal against a noncitizen," he is subject to mandatory detention during an initial "90-day 'removal period.'" *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 578 (2022) (quoting INA §§ 241(a)(1)(A), (a)(2)). "The removal period begins on the latest of three dates: (1) the date the order of removal becomes 'administratively final,' (2) the date of the final order of any court that entered a stay of removal, or (3) the date on which the [respondent] is released from non-immigration detention or confinement." *Johnson v. Guzman Chavez*, 594 U.S. 523, 529 (2021) (quoting INA § 241(a)(1)(B)). "After the removal period expires, the Government 'may' detain only four categories of people: (1) those who are 'inadmissible' on certain specified grounds; (2) those who are 'removable' on certain specified grounds; (3) those it determines 'to be a risk to the community'; and (4) those it determines to be 'unlikely to comply with the order of removal.'" *Arteaga-Martinez*, 596 U.S. at 578–79 (quoting INA § 241(a)(6)). Section 241 "further provides that when an alien reenters the country after having already been removed, 'the prior order of removal is reinstated from its original date and is not subject to being reopened or reviewed.'" *Guzman Chavez*, 594 U.S. at 533 (quoting INA § 241(a)(5)).

As noted above, the Court "is divested of jurisdiction over a bond proceeding . . . upon the entry of an administratively final order of deportation." *Matter of Valles*, 21 I&N Dec. at 772. "[R]einstated removal orders are 'administratively final'" for purposes of detention even when the alien is placed in withholding-only proceedings. *Guzman Chavez*, 594 U.S. at 534–36 ("When an alien applies for withholding-only relief, he does so as to a particular country. . . . If an immigration judge grants an application for withholding of removal, he prohibits DHS from removing the alien *to* that particular country, not *from* the United States. The removal order is not

vacated or otherwise set aside." (emphasis in original)). "Like [INA § 236](c), neither § [235](b) nor § [241](a) on their face provides for bond hearings." *Rodriguez Diaz*, 53 F.4th at 1198; *see Jennings*, 583 U.S. at 297 (holding that INA §§ 235(b)(1) and (b)(2) "mandate detention of applicants for admission until certain proceedings have concluded"); *Guzman Chavez*, 594 U.S. at 526 ("[Section 241] governs the detention of aliens subject to reinstated orders of removal, meaning those aliens are not entitled to a bond hearing while they pursue withholding of removal.").

### *Prolonged Detention*

In 2013, the District Court certified a class of nearly "[a]ll non-citizens within the Central District of California" who have been detained for at least 180 days under sections 235(b), 236(a), 236(c); and 241(a), and issued a permanent injunction requiring class members "be afforded bond hearings after six months of detention." *Rodriguez v. Holder*, No. CV 07-3239 TJH (RNBx), 2013 WL 5229795 at *1, *3 (C.D. Cal. Aug. 6, 2013) (excluding persons subject to "a national security detention statute"), *aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins*, 804 F.3d 1060 (9th Cir. 2015), *rev'd sub nom. Jennings v. Rodriguez*, 583 U.S. 281 (2018). The Ninth Circuit subsequently narrowed the class to exclude persons detained under section 241(a), and affirmed the injunction. *Rodriguez*, 804 F.3d at 1086. The United States Supreme Court reversed. *Jennings*, 583 U.S. at 311–12. However, neither the Supreme Court nor the Ninth Circuit explicitly vacated, stayed, or otherwise modified the underlying permanent injunction. *See Rodriguez v. Marin*, 909 F.3d 252, 256 (9th Cir. 2018) ("Like the Supreme Court, we do not vacate the permanent injunction pending the consideration of these vital constitutional issues."). Thus, "the permanent injunction . . . remain[s] in effect" in the Central District, and the Court retains jurisdiction to conduct a custody redetermination hearing pursuant to this authority. *Rodriguez v. Marin*, No. CV 07-03239-TJH (SPx), 2020 WL 13724475, at *3 (C.D. Cal. May 28, 2020).

In 2011, the District Court for the Central District of California certified a class of all unrepresented detainees in California, Arizona, and Washington who have "a serious mental disorder or defect that may render them incompetent to represent themselves in detention or removal proceedings." *Franco-Gonzales v. Napolitano*, No. CV 10-02211 DMG (DTBx), 2011 WL 11705815, at *16 (C.D. Cal. Nov. 21, 2011). The District Court subsequently issued an injunction that required "the provision of a custody redetermination hearing for individuals . . . who have been detained for a prolonged period of time greater than 180 days." *Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG (DTBx), 2013 WL 3674492, at *20 (C.D. Cal. Apr. 23, 2013); *see also Franco-Gonzalez v. Holder*, No. CV 10-02211 DMG (DTBx), 2013 WL 8115423 (C.D. Cal. Apr. 23, 2013) (accompanying judgment).

Detainees are not statutorily entitled to periodic bond hearings throughout the course of their detention, even if prolonged. *Jennings*, 583 U.S. at 311–12; *Arteaga-Martinez*, 596 U.S. at 578–79.

### *Subsequent Bond Requests*

"After an initial bond redetermination, an alien's request for a subsequent bond redetermination shall be made in writing and shall be considered only upon a showing that the alien's circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e).

**Conduct of Hearing and Evidentiary Issues**

"[B]ond and removal are distinctly separate proceedings," *Matter of R-S-H-*, 23 I&N Dec. 629, 630 n.7 (BIA 2003), and bond hearings "are far less formal than removal hearings," *Joseph v. Holder*, 600 F.3d 1235, 1243–44 (9th Cir. 2010). *See also Matter of Khalifa*, 21 I&N Dec. 107, 112 (BIA 1995) (noting "informal procedures may be used" in bond proceedings). Indeed, "bond hearings are generally briefer[.]" *Immigration Court Practice Manual*, Chapter 8.3(e)(6). Proffers are specifically contemplated and the taking of in-court testimony is at the Court's discretion. *Id.*

The rules of evidence that apply in regular criminal and civil proceedings do not strictly bind immigration proceedings. *See Baliza v. INS*, 702 F.2d 1231 (9th Cir. 1983); *Hernandez v. Garland*, 52 F.4th 757, 766 (9th Cir. 2022). Immigration judges exercise "independent judgment and discretion and may take any action consistent with their authorities under the Act[,]" including receiving evidence and taking testimony. 8 C.F.R. § 1003.10(b). The Court has "broad discretion to conduct and control immigration proceedings and to admit and consider relevant and probative evidence." *Matter of Interiano-Rosa*, 25 I&N Dec. 264, 265 (BIA 2010). The "sole test for admission of evidence is whether the evidence is probative and its admission is fundamentally fair." *Espinoza v. INS*, 45 F.3d 308, 310 (9th Cir. 1995). "The burden of establishing a basis for exclusion of evidence from a government record falls on the opponent of the evidence[.]" *Id.*

The Court has "broad discretion to accept a document as authentic or not based on the particular factual showing presented." *Vatyan v. Mukasey*, 508 F.3d 1179, 1185 (9th Cir. 2007). Arguments "regarding authentication and chain of custody generally go to the weight of the evidence, not its admissibility." *Matter of D-R-*, 25 I&N Dec. 445, 459 (BIA 2011), *remanded on other grounds*, *Radojkovic v. Holder*, 599 F. App'x 646 (9th Cir. 2015). To authenticate a document, "there must be proof that the form is what is purports to be." *Iran v. INS*, 656 F.2d 469, 473 (9th Cir. 1981); *accord Sinotes-Cruz v. Gonzales*, 468 F.3d 1190, 1196 (9th Cir. 2006) (documents with government stamps, fax notations, and court records on their face gave "every indication of being official ... records").

Additionally, "it is well settled that hearsay rules are not binding in immigration proceedings." *Matter of O-R-E-*, 28 I&N Dec. 330, 337 (BIA 2021). Indeed, there is no automatic right to cross-examine the preparer of documents in immigration proceedings. *See, e.g.*, *Baliza*, 702 F.2d at 1234; *Espinoza*, 45 F.3d at 311–12. It is assumed that "public officials perform their duties properly without motive or interest other than to submit accurate and fair reports." *Espinoza*, 45 F.3d at 310. Absent any evidence that a Form I-213 contains information that is incorrect or was obtained by coercion or duress, it is inherently trustworthy. *See Trias-Hernandez v. INS*, 528 F.2d 366, 369 (9th Cir. 1975); *Matter of Barcenas*, 19 I&N Dec. 609, 611 (BIA 1988).

Regulation requires that a "foreign language document offered by a party in a proceeding shall be accompanied by an English language translation and a certification signed by the translator that must be printed legibly or typed. Such certification must include a statement that the translator is competent to translate the document, and that the translation is true and accurate to the best of the translator's abilities." 8 C.F.R. § 1003.33.

Even if a claim is credible, the Court "need not find [the] evidence persuasive or sufficient to meet the burden of proof." *Garland v. Ming Dai*, 141 S. Ct. 1669, 1680 (2021). The Court is not required to accept the assertions of a party, "even if plausible, where there are other permissible views of the evidence based on the record." *Matter of D-R-*, 25 I&N Dec. at 455.

**Burden of Proof and Discretion**

"As recognized by the Supreme Court, section 236(a) does not give detained aliens any *right* to release on bond. Rather, the statute merely gives the Attorney General the authority to grant bond *if* he concludes, in the exercise of broad discretion, that the alien's release on bond is warranted." *Matter of D-J-*, 23 I&N Dec. 572, 575 (A.G. 2003) (emphasis in original) (citing *Carlson v. Landon*, 342 U.S. 524, 534 (1952)). A respondent seeking release on bond pursuant to section 236(a) "bears the burden of establishing 'that he or she does not present a danger to persons or property, is not a threat to the national security, and does not pose a risk of flight.'" *Flores v. Lynch*, 828 F.3d 898, 909 (9th Cir. 2016) (quoting *Matter of Guerra*, 24 I&N Dec. 37, 39 (BIA 2006)). Indeed, the respondent must "demonstrate[] by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk.'" *Rodriguez Diaz*, 53 F.4th at 1200 (quoting *Matter of Guerra*, 24 I&N Dec. at 40).

In *Rodriguez* bond proceedings, the Department bears the burden to "justify a non-citizen's detention by clear and convincing evidence," *Rodriguez*, 804 F.3d at 1087, and to demonstrate that he presents "a danger to the community, a threat to national security, or a flight risk," *Matter of Panin*, 28 I&N Dec. 771, 772 (BIA 2024).

In *Franco-Gonzalez* bond proceedings, the Department "bears the burden of justifying [a class member's] continued detention by clear and convincing evidence," *Franco-Gonzalez*, 2013 WL 3674492 at *13, and to demonstrate that he presents "a danger to the community, a threat to national security, or a flight risk," *Matter of Panin*, 28 I&N Dec. at 772.

The Court determines whether a party's burden is met by considering factors such as "the individual's ties to the United States[,] . . . employment history, criminal record, history of immigration violations, and manner of entry into this country," *Rodriguez Diaz*, 53 F.4th at 1197, as well as "the likelihood that relief from removal will be granted," *Matter of R-A-V-P-*, 27 I&N Dec. 803, 805 (BIA 2020). "[T]he INA does not limit the discretionary factors that may be considered" in a custody proceeding, *Matter of D-J-*, 23 I&N Dec. at 576, and "Immigration Judges may take into consideration all relevant and probative evidence, regardless of which party filed it, to determine if the evidence establishes custody factors[,]" *Matter of Dobrotvorskii*, 29 I&N Dec. 211, 213 (BIA 2025). Moreover, the Court may "give greater weight to one factor over others, as long as the decision is reasonable." *Matter of Guerra*, 24 I&N Dec. at 40.

**Danger and National Security Considerations**

In a bond proceeding, the Court must "first consider whether the respondent is a danger to the community or a threat to national security before considering whether he presents a risk of flight." *Matter of R-A-V-P-*, 27 I&N Dec. at 804. To determine whether a respondent's release would

present a danger to the community, the Court may consider "direct and circumstantial evidence of dangerousness, including whether the facts and circumstances present national security considerations." *Matter of Fatahi*, 26 I&N Dec. at 791.

To conduct this analysis, the Court considers a respondent's "criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses," *Matter of Guerra*, 24 I&N Dec. at 40, as well as any other "unfavorable evidence of his conduct" then that reflects a lack of danger to the community of national security, *Matter of R-A-V-P-*, 27 I&N Dec. at 804 (quoting *Matter of Guerra*, 24 I&N Dec. at 40–41). "In the context of custody redeterminations, Immigration Judges are not limited to considering *only* criminal convictions." *Matter of Guerra*, 24 I&N Dec. at 40. Rather, the Court "may properly consider any unfavorable evidence of an alien's conduct, including arrests that did not ultimately result in conviction." *Matter of Urena*, 25 I&N Dec. 140, 140 (BIA 2009). Conversely, the Court may not "look behind the fact of conviction and relitigate the ultimate question of an alien's guilt or innocence." *Matter of C-M-M-*, 29 I&N Dec. 141, 142 (BIA 2025) (citing *Matter of Roberts*, 20 I&N Dec. 294, 301 (BIA 1991)).

While the Court "may consider a State court's decision as to dangerousness and the amount of bail that was set in criminal proceedings," the Court "does not owe a State court custody order deference in immigration bond proceedings." *Matter of Choc-Tut*, 29 I&N Dec. 48, 50 (BIA 2025) ("The legal standards for bail in State court may be different than in Immigration Court and there may be a variety of reasons why an Immigration Judge may or should reach a different determination than a State court judge. It is for the Immigration Judge to make his or her own determination as to dangerousness under the custody redetermination provisions of the INA and applicable precedent.").

**<u>Flight</u>**

"Only if an alien does not pose a danger to the community should an Immigration Judge continue to a determination regarding the extent of [his] flight risk." *Matter of Urena*, 25 I&N Dec. at 141. If so, the Court then looks to see if there exists a monetary amount for "bond, even if coupled with alternatives to detention," that "would be sufficient to ensure the applicant's appearance at future immigration hearings and, if necessary, her surrender for removal from this country." *Matter of C-M-M-*, 29 I&N Dec. at 144.

The Court assesses a respondent's flight risk by considering factors such as his "family ties and his possible eligibility for discretionary relief," as well as whether he has "a fixed address, a residence of long duration, a history of employment, and other community ties." *Matter of Siniauskas*, 27 I&N Dec. 207, 209 (BIA 2018); *see also Matter of Akhmedov*, 29 I&N Dec. 166 (BIA 2025) ("Significant discrepancies regarding whether the respondent lives in New York or Michigan and his past failure to file timely change of address notices with the Immigration Court, when considered in the totality of the circumstances, demonstrate that the respondent is a flight risk and does not warrant release on bond."); *Matter of Dobrotvorskii*, 29 I&N Dec. at 213 ("In bond proceedings, the existence of a valid, reliable, and credible sponsor is relevant to the determination of flight risk."); *Matter of R-A-V-P-*, 27 I&N Dec. at 806 (the Court may properly consider evidence, or lack thereof, of the sponsor's relationship to the detainee, present immigration status, and ability to support the detainee and ensure future appearances). A

respondent's unlawful entry is also relevant to an analysis of his risk of flight. *Matter of Shaw*, 17 I&N Dec. 177, 179 (BIA 1979); *see also, e.g.*, *Matter of C-M-M-*, 29 I&N Dec. at 144 ("the applicant's extensive and lengthy history of immigration law violations attests to the applicant being a significant flight risk"). While the Court may also consider "the likelihood that relief from removal will be granted," *Matter of R-A-V-P-*, 27 I&N Dec. at 805, "[a] grant of withholding of removal that is pending on appeal does not justify release on bond where the factors regarding flight risk weigh strongly against release on bond." *Matter of E-Y-F-G-*, 29 I&N Dec. 103 (BIA 2025).

## Terms of Release

If a detainee is "neither dangerous nor enough of a flight risk to require detention without bond," the Court may order his release "on bond or subject to other conditions of release." *Hernandez v. Sessions*, 872 F.3d 976, 981–82 (9th Cir. 2017); *see also Hernandez v. Lynch*, No. EDCV 16-00620 JGB (KKx), 2016 WL 7116611, *20 n.20 (C.D. Cal. Nov. 10, 2016) (noting "possible alternative conditions of supervision could include Global Positioning System tracking, periodic in-person and telephonic reporting, and home visits"). To determine the appropriate terms of release, the Court must "(a) consider the person's financial ability to pay a bond; (b) not set bond at a greater amount than that needed to ensure the person's appearance; and (c) consider whether the person may be released on alternative conditions of supervision, alone or in combination with a lower bond amount, that are sufficient to mitigate flight risk." *Hernandez*, 2016 WL 7116611 at *20.